FARMERS MUT. FIRE INS. CO. OF GREENE COUNTY v. MALONEY.—117 S. W. (2d) 757.

Eastern Section. March 18, 1938.

Petition for Certiorari Denied by Supreme Court, June 11, 1938.

30

Susong & Parvin, of Greeneville, for appellant.
Kilgo & Armstrong, of Greeneville, for appellee.

PORTRUM, J.   The complainant, H. C. Maloney, sues the defendant, a domestic mutual fire insurance corporation, operating on the assessment plan, for benefits aggregating $3,190 to which he avers he is entitled under a policy issued to him by the defendant which was in force at the date of his loss.   He charges that in September 1932 he suffered a loss by fire of property insured under the policy in said amount and that at the time of such loss the policy was in effect.

The defendant denies that it is liable to the complainant and charges that at the time of the fire the complainant had lapsed his policy by nonpayment of an assessment of $22 levied against him by the defendant on July 1, 1932; that the policy remained lapsed and afforded the complainant no protection when the fire occurred. To establish the lapse the defendant relies upon the following provisions of the policy:

"Should the insured neglect to pay any assessment to meet the loss of property by any member of the Greene County Association, that at noon of the thirtieth day after the secretary's notices have been issued, the liability of this association shall cease until such a time as the insured be again restored to membership in the association, but the treasurer shall collect the last assessment, it being the premium for past protection."

This provision of the policy standing alone would settle the issue in favor of the defendant, but there are other provisions of the policy conflicting with this provision which renders the meaning of

the entire contract somewhat ambiguous and requires a construction of the policy to reconcile its provision. And it is insisted and was so held by the Chancellor that the above quoted provision of the policy is in direct conflict with the charter provisions of the corporation, which rights and restrictions are defined in the Code of 1932, Sections 6295-6297. The quoted provision is section or paragraph No. 6; and paragraph 3 reads:

"3. Either the insured or the association may at any time be released from the obligations of this policy by giving the other thirty days notice of such intention, but the insured and the association shall both be bound, until the 30th day of such notice."

Paragraphs 5, 9 and 12 read:

"5. This policy shall remain in force until such time as it may be cancelled either by the insured or the association, as provided by this policy, or by the by-laws of this association.

"9. That both the association and the insured shall be governed by the by-laws of this association.

"12. Any member may withdraw his or her property, or any portion of it, from the association, by paying all assessments in the same, including $1 renewal fee and giving the agent or president 30 days notice of his intention prior to time of withdrawal, likewise, the association may, through the Board of Directors, or through its president and resident directors, remove any property they deem necessary, according to the by-laws of the association, by giving the insured 30 days notice prior to the time of withdrawal. But both the association and the insured shall be bound until noon of the 30th day, from date of notice."

Section 20, paragraph 2, provides:

"It shall be the duty of the secretary-treasurer to:—

" 'He shall notify any member whose policy may be in any way changed.' "

It seems clear that the directors and officers of the corporation interpreted these provisions of the contract to mean that a policyholder was a member of the corporation and that he was liable for the assessment for losses assessed against the property insured until he withdrew his property from the association as provided in Section 12 above quoted, but in case the policyholder suffered a loss at a time when he was in default in the payment of his assessment, of which he had received due notice, then that the association's liability was suspended during his default and while the policyholder still remained a member of the association, yet he had no claim against the association for the loss because of his ·default. The association had printed cards notifying the defaulting members or policyholders of their rights as well as their liability under the policy. The contents of this card is as follows:

32

"Dear Sir: You are now two assessments past due, if you desire to withdraw your insurance we would refer you to Section 12 of our by-laws to learn how you may withdraw. This is all the way that I can discontinue your insurance. The company hates to lose you but if it is your desire to quit this is your only way.

"Respectfully,

"D. O. Ross, President.

"J. O. Young, Secretary."

The complainant had been a policyholder and a member of this association for 28 years prior to his loss, and up until the time of the loss he had never neglected to pay his assessments when made. And the card, bearing the notice of the assessment, when made, also carried notice of past former assessments, and the total including the current assessment and all former assessments past due. These facts clearly indicate that the directors interpreted the contract to mean that the policyholder could escape liability for present and future assessments only by withdrawing as provided in Section 12 of the by-laws which is carried into the policy under the same section and number.

But they construe Section 6 of the policy, above set out, to suspend liability on the part of the association during the time the policyholder was in default in payment of his past due assessments. The complainant insists that this construction is contrary to the express provision of the policy and in direct conflict with the provision of the statute defining the charter rights of the corporation. Of course, if this interpretation as given it by the association is in conflict with the statute defining its charter rights and liability, then the issue involved here is determined.

When the policy was issued on September 1, 1905, Chapter 220 of the Acts of 1895 was the statute which governed the rights and liabilities of the parties thereto, subject to the rights of the defendant to adopt by-laws consistent with the Act and to incorporate in the policy such provisions as should be consistent with the Act and the by-laws. This law was reenacted by the Legislature of 1907, Chapter 463, and carried into Shannon's Code, Section 3369a41. And the general provision of the law, without material change so far as the issues here involved are concerned, is carried into the official Code of 1932 in Sections 6295-6297. Article 5 of the Code entitled "Domestic County Mutual Fire Insurance" begins with Section 6284, which section defines the company. The succeeding sections describe the contents of the policy and mutual obligations, and the liability of the insured for such assessments as may be necessary to pay in full all losses sustained and incurred by the corporation. Notice of assessments, and time of payment, etc. And Section 6293 grants a lien on the insured's property for the assessment. And the suc-

ceeding section authorizes suits for assessment and recovery thereon with attorney's fee. The Act provides ''The corporation may maintain an action against any member thereof to recover all assessments which he may neglect or refuse to pay when due [etc].'' The following section provides a more summary method of dealing with defaulting.policyholders:

''6295. Any member who refuses or neglects to pay his assessment may, for such reason or for any other reason satisfactory to the directors or executive committee, be excluded by a majority of the directors or executive committee, or as the by-laws may prescribe, from the corporation; and when thus excluded, the secretary shall cancel or withdraw his policy or policies, which shall prevent his recovering for any loss or damage sustained after such exclusion.''

''6296. Such member shall remain liable for the payment of any assessment made prior to his exclusion and for the penalty above provided in case such action has been or shall be brought against him therefor within twelve months after the time it was due.''

''Section 6297. If any member of the corporation shall be excluded therefrom as herein provided and his insurance cancelled, the secretary shall at once enter the same, with the date thereof upon the records of the corporation, and either in person or by mail notify the member of such exclusion and cancellation of his insurance; and if by mail, the postage shall be prepaid and the notice addressed to him at his last postoffice address given on the company's book of record.''

The by-laws of this corporation as contained in its policy of insurance provide for the expulsion of a member upon his failure to pay the ·assessment within thirty days after due notice thereof, and this by-law conforms with the general statute which authorizes the expulsion of the member for a failure to pay the assessment as provided by the statute and the by-laws, but the· statute provides that when a member is ·excluded under this by-law, the secretary must notify the member of his suspension and the cancellation of his insurance. The defendant association's policy is silent upon the question of this notice, other than that the secretary shall notify the policyholder of any change in his policy. It is conceded that no notice had ever been given the insured that his policy had been cancelled and he had been excluded as a member.

■ ■ The court is of the opinion that under the provisions of the general law, and the construction of the contract with the general law in view, that the insured was liable for future assessments until he withdrew by the method provided by the by-laws, or he was expelled or excluded for a failure to pay the past due assessments, and since his liability was dependent upon his expulsion, he was entitled to the statutory notice that he had in fact been expelled and

his policy cancelled. Until this was done his liability continued and the obligation arising under the contract being defined by the statute as mutual, then the company's liability for loss continued until both the insured and insurer had been released as provided by the statute.

An attempt was made to draw a distinction between a member of the association and the rights of a member growing out of his policy. It is argued that notice under the statute is required to expel him as a member, but that his policy can be suspended leaving to the member certain rights should he desire to again take out insurance. Statutory notice of suspension was not intended to protect this incidental right, if any, but was to protect the policyholder against oversight in the payment of his assessments when due, and give him immediate notice of the loss of his insurance when cancelled under the by-laws of the association, which would permit him to immediately protect his interest by paying up his assessments and being reinstated or taking out other insurance. In the instant case the insured carried his policy and paid up his assessments for twenty-eight years without default, but being harassed with family and business cares he overlooked and forgot the last assessment and was reminded of his oversight when his loss occurred. Had the association taken action, as it was required to do, at the expiration of thirty days after the notice of assessment and excluded the member and notified him, the oversight would have been called to his attention, as it was the purpose of the statute to do, and the assessment would have been paid, the loss covered, and the purpose of the mutual agreement satisfied.

The court so interprets this statute and holds that the policy was in force at the date of the loss, because of the failure to give notice of the cancellation as provided by the statute. The judgment of the lower court is affirmed with costs.

Ailor and McAmis, JJ., concur.